**CITY OF MIDDLETOWN, Appellee,**

v.

**NEWTON, Appellant.**

[Cite as *Middletown v. Newton* (1998), 125 Ohio App.3d 540.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA97–07–149.

Decided Feb. 9, 1998.

*Bruce Fassler,* Middletown City Prosecutor, for appellee.

*Patrick D. Long,* for appellant.

KOEHLER, Judge.

Defendant-appellant, Donald Newton, appeals his conviction in the Middletown Municipal Court for driving while under the influence of alcohol ("DUI") in violation of Middletown Codified Ordinances 434.01(A)(1). Appellant entered a no contest plea to the charge after he unsuccessfully moved to suppress the results of his blood-alcohol test.

On August 3, 1996, appellant and Shana Harrison were both traveling east on Tytus Avenue in Middletown, Ohio. As Harrison was turning left onto Auburn

Street, appellant's motorcycle struck Harrison's Chevrolet 1500 pickup truck in the rear. Appellant was injured in the accident and was subsequently flown to Miami Valley Hospital in Dayton. The police officers investigating the accident spoke with the paramedics and the attending doctor at the hospital and were advised that appellant "had a very strong odor of intox[ication] about him." The officers then went to the hospital to attempt a blood-alcohol test. However, the officers missed the two-hour limitation because appellant was in a CAT scan at the time they arrived. Due to appellant's condition, the officers did not issue any citations at that time.

The record shows that at 7:30 p.m. on the day of the accident, while appellant was at the hospital, a blood-alcohol test was performed by hospital personnel. The test revealed a blood-alcohol concentration of .209. It is undisputed, and plaintiff-appellee, the city of Middletown, so stipulated at the hearing on the motion to suppress, that (1) appellant was not under arrest at the time the test was performed, (2) the test was not performed at the request of the officers investigating the accident, and (3) appellant was conscious when the test was performed.

The investigation was subsequently assigned to Detective Will Rogers who, pursuant to R.C. 2317.02(B)(2)(a), submitted a written statement to Miami Valley Hospital requesting the release of any alcohol testing performed by the hospital on appellant. Once Rogers received the results of appellant's blood-alcohol test, charges were filed against appellant on August 19, 1996.

On November 1, 1996, appellant filed a motion to suppress the results of his blood-alcohol test. The trial court denied appellant's motion by opinion filed January 22, 1997. A motion for reconsideration subsequently filed by appellant was denied by the trial court on March 18, 1997. On July 14, 1997, appellant entered a no contest plea to the DUI charge. By judgment entry filed the same day, the trial court found appellant guilty as charged and sentenced him accordingly. Appellant now appeals, raising the following two assignments of error:

Assignment of Error No. 1:

"The trial court erred in overruling appellant's motion to suppress the results of a blood alcohol test when the test was administered by a hospital in the course of treatment at a time when the appellant was not under arrest and when said test was not given at the direction of a law enforcement officer; and when the appellant was conscious and able to refuse said test."

Assignment of Error No. 2:

"The trial court erred in failing to suppress the results of a blood alcohol test when such test was taken for treatment purposes and the results of such tests are privileged and not subject to disclosure pursuant to 42 United States Code 290."

■     Under his first assignment of error, appellant argues that the trial court's failure to suppress the results of his blood-alcohol test was in violation of his rights under R.C. 4511.191.  It is appellant's contention that "if a Defendant is not in a condition in which he is unable to give consent, or unless he gives actual consent to a police officer, an arrest must precede application of implied consent, and a test obtained in such circumstances must be suppressed."  In its January 22, 1997 opinion, the trial court found that R.C. 2317.02(B)(1)(b) controlled the situation and that the results of appellant's blood-alcohol test were admissible under R.C. 2317.02(B)(1)(b).

"R.C. 4511.191 [Ohio's implied consent statute] provides the statutory framework under which a person impliedly gives consent to a chemical analysis of bodily substances to determine alcoholic content." *Fairfield v. Regner* (1985), 23 Ohio App.3d 79, 81, 23 OBR 144, 146, 491 N.E.2d 333, 335.  R.C. 4511.191 states:

"(A) *Any person who operates a vehicle* upon a highway or any public or private property used by the public for vehicular travel or parking with this state *shall be deemed to have given consent to * * * tests of the person's blood, * * ** for the purpose of determining the alcohol * * * content of the person's blood, * * * *if arrested* for operating a vehicle while under the influence of alcohol, * * * or for operating a vehicle with a prohibited concentration of alcohol in the blood, * * *. *The chemical test or tests shall be administered at the request of a police officer* having reasonable grounds to believe the person to have been operating a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking in this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine.  The *law enforcement agency* by which the officer is employed *shall designate which of the tests shall be administered.*

"(B) Any person who is dead or unconscious, or who is otherwise in a condition rendering the person incapable of refusal, shall be deemed not to have withdrawn consent as provided by division (A) of this section and the test or tests may be administered, subject to sections 313.12 to 313.16 of the Revised Code."  (Emphasis added.)

R.C. 2317.02(B)(1)(b) governs the separate issue of whether a physician's testimony concerning the results of the hospital blood-alcohol test is admissible and states:

"The following persons shall not testify in certain respects:

"* * *

"(B)(1) A physician or a dentist concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

"The testimonial privilege in this division does not apply, and a physician or dentist may testify or may be compelled to testify in any of the following circumstances:

"* * *

"(b) In any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the patient's blood, breath, urine, or other bodily substance at any time relevant to the criminal offense in question."

Appellant cites this court's decision in *Regner*, 23 Ohio App.3d 79, 23 OBR 144, 491 N.E.2d 333, and *State v. Taylor* (1982), 2 Ohio App.3d 394, 2 OBR 468, 442 N.E.2d 491, for the proposition that "[R.C.] 4511.191 requires an arrest as a prerequisite to [a valid] testing unless one of the following applies: (1) The Defendant gave actual consent; (2) The Defendant is in a condition due to which he is considered incapable of consent or refusal."

While appellant correctly cites *Regner* and *Taylor* for the foregoing proposition, we nevertheless find that these cases are factually distinguishable from the case at bar and that their holdings are inapplicable here. In *Regner*, the defendant was in an emergency vehicle when she was approached by a police officer who advised her she was not under arrest but that he wanted to take a sample of her blood for blood-alcohol analysis. After the defendant replied, "You can do anything you want," the officer instructed the paramedic to withdraw blood. The defendant was not arrested on the night of the offense nor did she ever sign a consent form. This court held that the defendant had acquiesced in and voluntarily approved of her blood being withdrawn and that as a result, the trial court had properly overruled the defendant's motion to suppress.

In *Taylor*, the police officer, while at the hospital, asked that blood be withdrawn from the unconscious defendant for a blood-alcohol test. In upholding the trial court's denial of the defendant's motion to suppress, this court held that an arrest was not a prerequisite to the withdrawal of blood from an unconscious person pursuant to R.C. 4511.191(B).

After reviewing both R.C. 4511.191(A) and 2317.02(B)(1)(b) in light of the facts of this case, we find that R.C. 2317.02(B)(1)(b), not 4511.191(A), controls the

situation here. For R.C. 4511.191(A) to apply, the defendant must be under arrest and the test must have been requested by a police officer.

In this case, it is undisputed that appellant was not under arrest at the time the test was performed. It is also undisputed that no blood samples were drawn for police use or as a result of a request by the investigating officers. Rather, the record shows that the test was performed on the date of the accident by hospital personnel for medical purposes. While, as appellant asserts, he was conscious at the time of the test and able to consent or refuse the test, there is absolutely no evidence that appellant actually refused the test or that the test performed by hospital personnel was performed against his will or over his objections. To the contrary, as the record stands before this court, appellant voluntarily submitted to the blood-alcohol test. Thereafter, on August 19, 1996, or approximately two weeks after the test was performed, Detective Rogers requested the hospital to release the results of any alcohol testing performed by the hospital on appellant.

The record shows that the request was made in full compliance with R.C. 2317.02(B)(2)(a). R.C. 2317.02(B)(1)(b) clearly provides that "the testimonial physician-patient privilege does not apply in criminal actions concerning test results measuring alcohol concentration when such results are relevant to a criminal offense in question." *State v. Quinones* (Feb. 14, 1996), Lorain App. No. 95CA006084, unreported, 1996 WL 62578. As the Sixth Appellate District stated in *State v. Grohowski* (Sept. 30, 1996), Lucas App. No. L-95-292, unreported, 1996 WL 549233, "R.C. 2317.02 does make clear that such a test result is accessible by the state and can be used in a prosecution against [appellant]. * * * R.C. 2317.02 simply puts the driver on notice that if [he] submits to tests at a hospital, the result can be used against [him]."

In light of all of the foregoing, we find that the trial court's failure to suppress the results of appellant's blood-alcohol test was not in violation of his rights under R.C. 4511.191, as 4511.191 did not apply to the case at bar. We further find that in light of R.C. 2317.02(B)(1)(b), the trial court did not err in failing to suppress the results of appellant's blood-alcohol test. Appellant's first assignment of error is overruled.

Under his second assignment of error, appellant argues that in light of Section 290, Title 42, U.S. Code, which "provides that records for the detection and treatment of alcohol abuse are privileged and not subject to disclosure," it was error for the trial court not to suppress the results of appellant's blood-alcohol test.

Section 290dd-2, Title 42, U.S. Code provides:

"(a) Requirement. *Records of the* identity, *diagnosis,* prognosis or treatment *of any patient* which are *maintained in connection with the performance of any*

*program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research,* which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States *shall,* except as provided in subsection (e), *be confidential* and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b).

"(b) Permitted disclosure. (1) Consent. The content of any record referred to in subsection (a) may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances, and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g).

"(2) Method of disclosure. Whether or not the patient, with respect to whom any given record referred to in subsection (a) is maintained, gives written consent, the content of such record may be disclosed as follows:

"\* \* \*

"(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

"(c) Use of records in criminal proceedings. Except as authorized by a court order granted under subsection (b)(2)(C), no record referred to in subsection (a) may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient." (Emphasis added.)

We find that Section 290dd–2, Title 42, U.S. Code does not apply to the case at bar. In *Ellison v. Cocke Cty., Tenn.* (C.A.6, 1995), 63 F.3d 467, holding that no private right of action existed under Section 290dd–2, Title 42, U.S. Code, the United States Court of Appeals for the Sixth Circuit stated the following:

"The underlying purpose of the Drug Abuse Office and Treatment Act of 1972, from which the confidentiality provision of the antecedent Section 290ee–3 derived, was 'to bring about the most effective deployment of Federal resources against the devastating growth of drug abuse in the United States.' \* \* \* The thrust of the Act was wholly administrative and bureaucratic: to coordinate federal drug abuse prevention efforts. \* \* \*

"The confidentiality of medical records maintained in conjunction with drug treatment programs was essential to that endeavor. Congress felt that 'the strictest adherence' to the confidentiality provision was needed, lest individuals in

need of drug abuse treatment be dissuaded from seeking help. * * * However, there is no indication that the confidentiality provision was intended to be enforceable by aggrieved private parties; the purpose of the provision was not to create private rights as much as it was to create public penalties in order to deter disclosure. * * * [I]t merely emphasizes the importance of preserving the confidentiality of patient records in order to encourage individuals to seek treatment. * * *

"In 1992, the Alcohol, Drug Abuse and Mental Health Administration was reorganized, and the confidentiality provisions for drug and alcohol abuse programs were combined into the present Section 290dd–2. Again, the thrust of this reorganization was solely administrative; the effort was 'an attempt to strengthen the federal effort to combat drug abuse, alcohol abuse and mental illness.' * * * We see no evidence that Congress viewed Section 290dd–2 as anything other than a statute reorganizing certain aspects of the federal administration of the program." *Id.* at 470–471.

In the case at bar, the facts indicate that appellant was not a patient seeking treatment for alcohol abuse at the hospital when the blood-alcohol test was performed. Rather, the record clearly shows that appellant was at the hospital solely because he had been injured when he struck the pickup truck in the rear. As a result, and in light of the fact that the purpose of Section 290dd–2, Title 42, U.S. Code is to preserve the confidentiality of patient records to encourage individuals to seek treatment, we find that the foregoing statutory provision does not apply here and that the trial court did not err in failing to suppress the results of appellant's blood-alcohol test. Appellant's second assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., and WALSH, J., concur.