I respectfully dissent from the majority's decision because I would reverse the trial court's decision denying Rollins' motion to suppress.
In reviewing a trial court's decision on a motion to suppress, an appellate court must independently determine as a matter of law, without deference to the trial court's conclusions, whether the appropriate legal standard has been met. See State v. Venham (1994), 96 Ohio App.3d 649,645 N.E.2d 831.
Rollins argues that the trial court's failure to suppress the results of his blood alcohol test was in violation of his rights under Ohio's Implied Consent statute, R.C. 4511.191.
R.C. 4511.191 states:
 (A) Any person who operates a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking within this state shall be deemed to have given consent to a chemical test or tests of the person's blood, breath, or urine for the purpose of determining the alcohol, drug, or alcohol and drug content of the person's blood, breath, or urine if arrested for operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or for operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine. The chemical test or tests shall be administered at the request of a police officer having reasonable grounds to believe the person to have been operating a vehicle upon a highway or any public or private property used by the public for vehicular travel or parking in this state while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse or with a prohibited concentration of alcohol in the blood, breath, or urine. The law enforcement agency by which the officer is employed shall designate which of the tests shall be administered.
 (B) Any person who is dead or unconscious, or who is otherwise in a condition rendering the person incapable of refusal, shall be deemed not to have withdrawn consent as provided by division (A) of this section and the test or tests may be administered, subject to sections 313.12 to 313.16 of the Revised Code. (Emphasis added.)
Unless a defendant is under arrest for a violation of R.C. 4511.19 and the test is requested by a police officer, the defendant is not deemed to have consented to the administration of the blood alcohol test under R.C. 4511.191. See City of Middletown v. Newton (1998),125 Ohio App.3d 540.
As the trial court found, the evidence supports Rollins' contention that the administration of his blood test was not in compliance with R.C. 4511.191.
It is undisputed that Rollins was not under arrest at the time the test was performed. Further, the blood sample was not drawn at the request of the investigating officers. Rather, the EMS technician testified that the test was performed for medical purposes.
Despite finding that the blood test did not comply with R.C. 4511.191, the trial court held that the blood alcohol test was admissible pursuant to R.C. 2317.02.
The majority erroneously states that Rollins asserted that the blood test should have been suppressed pursuant to R.C. 2317.02. However, Rollins does not raise this argument on appeal nor did either party rely on that statute below. The trial court was the first to apply R.C. 2317.02
to the case at hand in its decision.
R.C. 2317.02 governs the evidentiary issue of privileged communications. R.C. 2317.02(B)(2)(a) in particular determines whether the result of a hospital blood alcohol test is a privileged communication.
R.C. 2317.02, entitled "privileged communications," states that "[t]he following persons shall not testify in certain respects: * * * (B)(1) A physician * * * except as otherwise provided in * * * division (B)(2) * * *."
R.C. 2317.02(B)(2)(a) states as follows:
 If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 [2317.02.2] of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses. If the health care provider does not possess any of the requested records, the provider shall give the officer a written statement that indicates that the provider does not possess any of the requested records.
In order for this type of physician "testimony" to be admissible, it must fall within the exception set forth in R.C. 2317.02(B)(2). Here, the trial court erred in holding that the blood alcohol test at issue is a non-privileged communication, as the requirements of R.C. 2317.02(B)(2) were not met.
The trial court cites City of Middletown v. Newton (1998),125 Ohio App.3d 540, in support of its decision. In Newton, the Twelfth District Court of Appeals applied R.C. 2317.02 to a similar set of facts and found that the blood alcohol test in that case was admissible. However, in Newton, the police requested the results of the alcohol test approximately two weeks after the test was administered.[1] Thus, the court held that the record showed full compliance with R.C.2317.02(B)(2)(a).
In the case at bar, the trial court makes an unsubstantiated finding that "Cleveland Police Officers Herrin and Robinson went to Huron Road Hospital and, after discovering that blood was taken from the Defendant, requested results of any blood tests taken." See April 18, 2001 journal entry, Doc. 20. However, a review of the transcript reveals that neither officer testified to making such a request. Nor does the record contain evidence of a written request. As such, no competent, credible evidence exists to support this finding.
The majority analogizes the case at hand with State v. Slageter (Mar. 31, 2000), Hamilton App. No. C-990584, to support its decision. However,Slageter is distinguishable from the instant case.
As stated by the majority, Slageter "was not even suspected of criminal activity until several days after his release." The criminal investigation of Slageter's alleged alcohol use did not start until several days after his accident. The defendant in Slageter was charged with failure to maintain an assured clear distance, not driving under the influence. The investigation was reopened after a witness told the police that the defendant was intoxicated. Prior to receiving this information, the police officer who was at the scene testified that he did not smell any alcohol, and no one at the scene indicated that the defendant had been drinking alcohol.
When the police were notified of the defendant's intoxication, the nature of the criminal investigation changed, prompting the sheriff's department to request a release of the defendant's medical records pursuant to R.C. 2317.02(B)(2).
Here, there was no change in the nature of the criminal investigation. The testimony of the officers and their actions at the hospital make it clear that at all times it was their intent to charge Rollins with driving under the influence of alcohol.
The police captain at the scene of the accident observed Rollins and noted that he was unresponsive to the questions of a witness. The captain instructed other officers to cite Rollins for driving under the influence of alcohol, and a responding officer cited him at the hospital.[2]
Assuming, as the majority decides, that law enforcement officers complied with the mandates of R.C. 2317.02 when the prosecution obtained the blood test results via subpoena, R.C. 4511.191 still bars the admissibility of the blood alcohol test results. To find otherwise creates an avenue by which law enforcement can circumvent R.C. 4511.191, thus rendering the statute meaningless. Clearly, this was not the intent of the General Assembly in enacting R.C. 2317.02.
As stated by the Ohio Supreme Court in Thiel v. Allstate Ins. Co. (1986), 23 Ohio St.3d 108, 111, 491 N.E.2d 1121:
 It is a fundamental rule of statutory construction that sections and acts in pari materia that is, `in relation to the same matter, subject or object,' should be construed together. * * * [S]tatutes relating to the same or similar subject matter * * * should, where a case calling for the application of both is presented, be read together as if they were a single statute, and both should be reconciled, harmonized, and made to apply, and given meaning and effect, so as to render their contents operative and valid * * *. * * * [T]he various statutory provisions affecting a particular subject should be construed and applied so as to accomplish the manifest purpose of their enactment and give full force and effect to the legislative intent. (Citations omitted.)
The two statutes here are easily harmonized. R.C. 2317.02 simply removes the physician-patient privilege as it pertains to alcohol and drug tests in criminal investigations. Thus, it was permissible for the police to obtain the blood alcohol test results.
However, as the majority correctly states, R.C. 2317.02 merely serves as a means by which law enforcement officials can obtain blood test results from physicians. It does not mandate that the trial court admit the results once they have been obtained. Thus, while the results are obtainable, they are not admissible in the instant case due to the officer's failure to comply with R.C. 4511.191.
Such a reading renders the contents of both R.C. 2317.02 and R.C.4511.191 operative. Such a conclusion is further supported by the "elementary rule of statutory construction that, in the absence of language to the contrary, a specific statute controls over a general provision." Quality Ready Mix, Inc. v. Mamone (1988), 35 Ohio St.3d 224,226.
Here, R.C. 4511.191 is the specific statute tailored to the facts herein, while R.C. 2317.02 can be applied in other situations. Accordingly, R.C. 4511.191 controls.
Based on the foregoing analysis, I would reverse the decision of the trial court denying the motion to suppress.
[1] Also, in Newton, the police issued no citations at the hospital due to Newton's "condition."
[2] The majority incorrectly states that Rollins was charged under C.C.O. 433.01(a)(2); however, no subsection was specified.