The STATE of Ohio, Appellee,

v.

PULASKI, Appellant.

[Cite as *State v. Pulaski,* 154 Ohio App.3d 301, 2003-Ohio-4847.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19790.

Decided Sept. 12, 2003.

Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Terry L. Lewis, for appellant.

---

FREDERICK N. YOUNG, Judge.

{¶ 1} Teresa Pulaski, appellant, is appealing the judgment of the Montgomery County Common Pleas Court, which found her guilty of two counts of vehicular assault.

{¶ 2} Teresa Pulaski drove herself and her friend, Ryan Ladd, to a bar known as Cadillac Jack's in her Pontiac Grand Am. At the bar, they met another friend, Jennifer Phillips. While at Cadillac Jack's, the girls shared a pitcher of beer, and each had at least one shot of tequila. Pulaski and Phillips recalled that Pulaski and Ladd had then followed Phillips home in Pulaski's car so that Phillips could leave her car at home. Pulaski then drove with Phillips and Ladd to Have A Nice Day Café, a bar in the Oregon District of Dayton, Ohio. In route to the bar, the girls bought a six pack of beer and drank a portion of it.

{¶ 3} While at the bar, Phillips drank, and Pulaski had a beer. When the women left the bar and were heading to their car, Phillips fell in the parking lot. Phillips injured her head in the fall and was bleeding. The women decided to take Phillips to Miami Valley Hospital's emergency room. Ladd put Phillips in the back of the car, she got into the front passenger seat, and Pulaski got in the driver's seat. Phillips then got out of the vehicle and sat down on the ground against the rear tire on the driver's side. Ladd picked Phillips up and again placed her in the backseat. Ladd then got in the passenger-side backseat. Ladd testified that she had been holding Phillips because Philips had been upset and that Phillips had been sitting toward the center of the backseat while Ladd had sat on the passenger's side. Pulaski was in the driver's seat in the bar's parking lot. Pulaski and Ladd do not recall anything after this point until after the accident. Phillips recalls Pulaski pulling out of the bar's parking lot and asking how to get to the hospital. Phillips told her to take Main Street, but this is the extent of Phillips's memory.

{¶ 4} While attempting to turn into the hospital's emergency-room entrance from the southbound left turn lane on Main Street, Pulaski's vehicle failed to yield the right of way to an oncoming vehicle that was traveling north on Main Street. The vehicles collided, and all three of the women were injured. The Grand Am was a four-door car with two front seats and a bench seat in the rear. Ladd and Phillips sustained serious injuries. When Officer Murdock arrived at the accident scene, rescue workers were attempting to extract the girls from the vehicle, which took about 20 minutes. Ladd was found unconscious in the backseat of the vehicle. Phillips, who weighed approximately 200 pounds, was found pinned between the driver's side door and the steering wheel of the vehicle with her back to the driver's door and her hair caught in the driver's-side visor. Pulaski was on the passenger's side of the vehicle in the front seat.

{¶ 5} Pulaski had injuries to her right elbow and the right side of her face, including a laceration to the right side of her face containing glass fragments. Phillips suffered injuries to the front of her head and neck. Additionally, Phillips lost three teeth in the accident and had glass embedded in the right side of her face. Ladd suffered critical head trauma that left her in a coma and on life

support for several weeks. All of the bones in the right side of Ladd's face were broken multiple times. At the time of trial, Ladd continued to have headaches and memory problems. Additionally, the Grand Am had significant damage, including a cracked windshield, broken windows on the passenger side of the vehicle, a bent gear shift, a broken front passenger seat, and damage to the dash.

{¶ 6} On June 4, 2002, Pulaski was indicted on two counts of aggravated vehicular assault. She moved to suppress her blood-alcohol tests, and a hearing on the motion was held on October 11, 2002. The motion was overruled.

{¶ 7} A trial was held to the court on November 26 and 27, 2002, and January 17, 2003. The state presented evidence that at the hospital and on several occasions thereafter, Pulaski had stated that she had been the driver of the Grand Am at the time of the collision. However, prior to trial, Pulaski consulted with an accident reconstructionist, Fred Lickert, who studied the accident and concluded that Pulaski could not have been the driver of the Grand Am at the time of the collision. At trial, both Lickert and Pulaski testified. Pulaski testified that she no longer believed that she had been the driver of the vehicle and that she had only assumed she had been the driver at the time of the collision because she had remembered being the driver earlier in the evening. Lickert, who the state stipulated was an expert in accident reconstruction, testified that based on the photographs of the accident damage, the location of the women after the accident, and the injuries to the women, Pulaski could not have been the driver of the vehicle. Lickert opined that Phillips was likely the driver of the vehicle at the time of the accident.

{¶ 8} Pulaski was found guilty on both counts of aggravated vehicular assault and was sentenced to one year on each count, to run concurrently.

{¶ 9} Pulaski has filed this appeal from her convictions, raising the following assignments of error.

{¶ 10} "[1.] Whether the trial court erred in ruling that accident reconstruction testimony is not admissible in Ohio courts.

{¶ 11} "[2.] Whether the trial court erred in striking the testimony of a stipulated expert witness as to the motion of bodies in a car subsequent to a motor vehicle collision.

{¶ 12} "[3]. Whether the trial court erred in failing to grant the appellant's motion to suppress by permitting the state to admit blood alcohol results taken from the appellant subsequent to her arrest.

{¶ 13} "[4]. Whether the trial court erred in failing to grant the appellant's Rule 29 motion at the end of the state's case where no expert testimony was presented which related the appellant's blood alcohol level to her motor coordination or her ability to operate a motor vehicle.

{¶ 14} "[5.] Whether the trial court erred in admitting evidence of a blood alcohol test which violates 42 U.S.C. 290dd (2)(a) and 2317.02(B).

{¶ 15} "[6.] Whether the trial court erred in permitting the results of the blood alcohol tests taken by a health care provider where there is not testimony that the blood test was done for diagnostic or treatment purposes.

{¶ 16} "[7.] Whether the trial court erred in failing to grant the appellant's Rule 29 motion at the conclusion of the evidence and in rendering a verdict of guilty by finding that the state had sustained its burden of proof."

### Appellant's first and second assignments of error

{¶ 17} Pulaski essentially argues that the trial court erred in assigning no weight to accident reconstructionist Fred Lickert's testimony due to its determination that accident reconstruction was "junk science". We agree.

{¶ 18} A trial court has broad discretion in determining whether to admit or exclude expert testimony, and thus, we will not reverse its decision absent an abuse of discretion. *State v. Jones* (2000), 90 Ohio St.3d 403, 414, 739 N.E.2d 300. An abuse of discretion connotes an arbitrary, unreasonable, or unconscionable decision by the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. If the elements listed in Evid.R. 702 are satisfied, then the admission of expert testimony is favored. *State v. Williams* (1983), 4 Ohio St.3d 53, 57, 4 OBR 144, 446 N.E.2d 444.

{¶ 19} Evid.R. 702 permits a witness to testify as an expert when the following conditions are met:

{¶ 20} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 21} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 22} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 23} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 24} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 25} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 26} Expert testimony should be admitted only if the reasoning or methodology underlying the testimony is scientifically valid. *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. In determining the reliability, the court should consider several factors: "(1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance." Id.

{¶ 27} Ohio courts have recognized the science of accident reconstruction for several years. *Diener v. White Consol. Indus. Inc.* (1968), 15 Ohio App.2d 172, 44 O.O.2d 301, 239 N.E.2d 421. This court has repeatedly upheld judgments in cases that had admitted expert testimony of accident reconstructionists. *State v. McDaniel* (July 13, 1994), Miami App. No. 93–CA–38, 1994 WL 371229; *Grout v. Joseph* (Oct. 13, 2000), Miami App. No. 2000 CA 20, 26, 2000 WL 1513930; *Kreider v. Chaffin* (Oct. 27, 1983), Miami App. No. 83 CA 23, 1983 WL 2526; *State v. Morrow,* Clark App. No. 2002–CA–37, 2002-Ohio-6527, 2002 WL 31682098; *State v. Wissinger* (Mar. 30, 2001), Miami App. No. 00 CA 41, 2001 WL 303314; *State v. Amerson* (Sept. 18, 1998), Montgomery App. No. 16529, 1998 WL 636983; *Dayton v. Smith* (Sept. 5, 1997), Montgomery App. No. 15996, 1997 WL 568014.

{¶ 28} In the underlying case, Pulaski offered the testimony of Fred Lickert, an accident reconstructionist. The state stipulated to Lickert's qualifications as an expert. Lickert testified that it would have been impossible for Pulaski to have been driving the vehicle at the time of the collision, considering the damage to the vehicle, injuries to the passengers, and the location of the women following the collision. In rendering its decision, the trial court stated:

{¶ 29} "The evidence offered to oppose the strong inferential case given by the government through statements, through circumstances and the like, is the testimony of Mr. Lickert.

{¶ 30} "Why the State decided to stipulate that this science, if you will, that Mr. Lickert testified to is the subject of some expertise or expert testimony is beyond the knowledge of the Court. If there ever was a body of scientific or pseudoscientific testimony that would qualify as junk science under the terms used by the United States Supreme Court in the Dow—the [*Daubert* ] versus Dow Pharmaceutical case, this certainly is it.

{¶ 31} "However, that testimony was not challenged on a [*Daubert*] challenge, but rather was decided to be challenged on cross examination on the conclusions that were reached by this expert.

{¶ 32} "The Court finds that that testimony has no credibility and no weight. And the Court accords none to it."

{¶ 33} The state argues that the trial court did not refuse to admit the expert testimony as evidence but rather exercised its discretion as trier of fact and assigned no credibility to the testimony. The state points to several assumptions on which Lickert based his opinion and which the state argues were inaccurate. The state argues therefore that a sufficient basis existed for the trial court to not assign any weight to Lickert's testimony. However, the transcript quoted above does not indicate that the trial court's reason for dismissing Lickert's testimony was the court's dissatisfaction with the basis for his opinion. Rather, the court's opinion indicates that the sole reason for assigning no weight to Lickert's testimony was that the court found accident reconstruction to be "junk science." We find that it was improper for the trial court to give no weight to the testimony on this basis. Accident reconstruction has repeatedly been recognized by Ohio courts as admissible evidence. The trial court erred in granting no weight to Lickert's expert testimony. Pulaski's first and second assignments of error are sustained. The judgment of the trial court shall be reversed and the matter remanded for a new trial.

### Appellant's third assignment of error

{¶ 34} Pulaski argues that the trial court erred in failing to grant her motion to suppress her blood tests taken subsequent to her arrest. Pulaski argues that her blood tests should be suppressed because the officer who arrested her did not have probable cause to believe that she was under the influence of alcohol or that she had been operating a vehicle. We disagree.

{¶ 35} An individual is entitled to be free from unreasonable search and seizure. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Therefore, evidence that is obtained as a result of an unreasonable seizure must be suppressed. *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081. If insufficient evidence exists to establish probable cause for a defendant's arrest for driving under the influence of alcohol, then any evidence obtained subsequent to that arrest must also be suppressed. *State v. Taylor* (1980), 67 Ohio Misc. 4, 21 O.O.3d 461, 426 N.E.2d 532; *State v. Finch* (1985), 24 Ohio App.3d 38, 24 OBR 61, 492 N.E.2d 1254.

{¶ 36} At a motion to suppress, the trial court is in the role of trier of fact and thus is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d

498. Due to the trial court's position, an appellate court gives deference to the trial court's findings of fact if supported by competent, credible evidence. Id. However, the appellate court conducts a de novo review of whether the facts meet the appropriate legal standard in a given case. *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *Retherford,* supra.

{¶ 37} An officer has probable cause to arrest if the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person's believing that the defendant committed the offense. *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952. In making a determination of probable cause, the courts look at the totality of the facts and circumstances surrounding the arrest. Id.

{¶ 38} Pulaski argues that the officer did not have probable cause to believe that she was under the influence of alcohol when he placed her under arrest. Officer Murdock arrived at the scene of the automobile collision while the women were still inside the Grand Am. After the women were removed from the vehicle, the officer noticed at least one empty beer bottle on the backseat floorboard. When the officer entered the hospital, he found Pulaski lying on a cot in the hallway of the emergency room. The officer overheard her tell a nurse that she had been coming from a bar called Have a Nice Day Café. Additionally, the officer overheard Pulaski inform the nurse that she had had approximately four beers at the bar. The officer also noticed an odor of alcohol and Pulaski's slow speech. Further, Pulaski was disoriented, fluctuated from being very emotional to very calm, and repeated herself several times. We find that Pulaski's admissions regarding her drinking, combined with her behavior, warranted Officer Murdock's belief that she was under the influence of alcohol. The trial court did not err in determining that the officer had probable cause to believe that Pulaski was under the influence of alcohol.

{¶ 39} Additionally, Pulaski argues that Officer Murdock did not have probable cause to believe that she had been the driver of the vehicle. Officer Murdock overheard Pulaski tell a nurse at the hospital that she had been the driver of the vehicle. Moreover, Officer Murdock testified at the suppression hearing that a nurse, whom he knew, had stated that she had witnessed the accident and that Pulaski had been driving. Considering the information the officer had before him at the time of the accident, particularly Pulaski's statement that she had been the driver, the trial court did not err in finding that the officer had probable cause to believe that Pulaski was the driver of the vehicle. The trial court properly denied Pulaski's motion to suppress the blood tests taken at the hospital after Pulaski was arrested.

### Appellant's fourth assignment of error

{¶ 40} Pulaski argues that the trial court erred in failing to grant her Crim.R. 29 motion because the state failed to present any expert testimony relating her blood-alcohol level to her motor coordination or her ability to operate a vehicle. We disagree.

{¶ 41} Crim.R. 29 provides:

{¶ 42} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶ 43} A court should deny a Crim.R. 29 motion if the evidence is such that "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401, 381 N.E.2d 184. When reviewing a Crim.R. 29 motion, the evidence is viewed in the light most favorable to the state. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689.

{¶ 44} Pulaski was indicted for aggravated vehicular assault, a violation of R.C. 2903.08(A)(1), which provides:

{¶ 45} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in either of the following ways:

{¶ 46} "(1) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance."

{¶ 47} R.C. 4511.19(A) states:

{¶ 48} "No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

{¶ 49} "(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse.

{¶ 50} " * * *

{¶ 51} "(5) The person has a concentration of seventeen-hundredths of one per cent or more by weight of alcohol in the person's blood."

{¶ 52} Pulaski makes two arguments. First, Pulaski argues that under R.C. 4511.19(A)(1) the state had to provide expert testimony that her motor coordination and judgment were impaired and failed to do so. Additionally, Pulaski

asserted during oral argument that the state was required to present expert testimony that her intoxication while driving proximately caused the traffic accident.

{¶ 53} We disagree with Pulaski's claim that the state needed to present expert testimony that her motor coordination was impaired. Pulaski was charged with a violation of R.C. 2903.08(A)(1), which requires a violation only of R.C. 4511.19(A). Despite Pulaski's arguments that a violation of R.C. 4511.19(A)(1) is required, a violation of any of the subsections of R.C. 4511.19(A) would satisfy R.C. 2903.08(A)(1). Pulaski stipulated that her blood test taken the night of the accident showed that she had a concentration of twenty-three hundreds of one percent by weight of alcohol in her blood. With this blood-alcohol concentration, Pulaski would have violated subsection five of R.C. 4511.19(A)(5) if she had been the driver of the Grand Am on the night of the accident. Therefore, the state did not need to prove a violation of R.C. 4511.19(A)(1) and did not need to present expert testimony relating her blood-alcohol level to a lack of motor coordination.

{¶ 54} Pulaski additionally argues that the state needed to present expert testimony demonstrating that Pulaski's blood-alcohol concentration was the proximate cause of her loss of control of the vehicle and the subsequent injuries to Phillips and Ladd. Although the state did have the burden to demonstrate that Pulaski's blood-alcohol content proximately caused the accident, we see no requirement for this to be established through expert testimony. R.C. 2903.08(A)(1) states only that the serious physical harm to another person must be the proximate result of a violation of R.C. 4511.19(A). We see no need for expert testimony on the issue. Rather, we believe that proximate cause could have been inferred by the evidence indicating that Pulaski was the driver of the vehicle, Pulaski's blood-alcohol level, and the physical evidence of the accident itself. We find that the trial court could have reasonably inferred that Pulaski's driving the Grand Am with a blood-alcohol level of .23 percent was the proximate cause of the accident. The trial court did not err in overruling Pulaski's Crim.R. 29 motion. Pulaski's fourth assignment of error is without merit and is overruled.

Appellant's fifth assignment of error

{¶ 55} Pulaski argues that the trial court erred in admitting evidence of the blood-test results taken by the hospital as the test results were not authorized by R.C. 2317.02(B)(2)(a) because the disclosure was contrary to federal law. We disagree.

{¶ 56} The physician-patient privilege is set forth in R.C. 2317.02(B)(1), which provides that the following persons shall not testify: "A physician * * * concern-

ing a communication made to the physician * * * by a patient in that relation or the physician's * * * advice to a patient, except as otherwise provided in this division, division B(2), and division (B)(3)." However, this privilege does not apply and a physician may be forced to testify "[i]n any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol * * * in the patient's blood, breath, urine, or other bodily substance at any time relevant to the criminal offense in question." R.C. 2317.02(B)(1)(c).

{¶ 57} Additionally, R.C. 2317.02(B)(2)(a) provides the following exception to the physician-patient privilege:

{¶ 58} "If any law enforcement officer submits a written statement to a health care provider that states that an official criminal investigation has begun regarding a specified person or that a criminal action or proceeding has been commenced against a specified person, that requests the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol * * * in the persons blood, breath, or urine at any time relevant to the criminal offense in question, and that conforms to section 2317.022 of the Revised Code, the provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses."

{¶ 59} Pulaski argues that the hospital's records of her blood-test results should be suppressed because R.C. 2317.02(B)(2)(a) does not apply due to Sections 290dd–2(a) and (c), Title 42, U.S.Code, which prohibits such records from being used against a defendant. Section 290dd–2(c), Title 42, U.S.Code states, "Except as authorized by a court order granted under subsection (b)(2)(C) of this section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient." Subsection (a) prohibits the disclosure of "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research." Pulaski asserts that the state violated subsection (c) by failing to obtain a court order to obtain her blood-test results from the hospital. Pulaski asserts that as a result of violating this subsection, the R.C. 2317.02(B)(2) exception to the physician-patient privilege does not apply. However, the Twelfth District Court of Appeals stated in *Middletown v. Newton* (1998), 125 Ohio App.3d 540, 708 N.E.2d 1086, that Section 290dd–2(c), Title 42, U.S.Code applies only to individuals seeking treatment for their alcohol or drug abuse, not

to individuals seeking treatment at a hospital for injuries sustained in a traffic accident.

{¶ 60} Pulaski was at the hospital the night of the accident because she was being treated in the emergency room for injuries sustained from the car accident. Pulaski was not seeking treatment for alcohol abuse. Therefore, Sections 290dd–2(a) and (c), Title 42, U.S.Code do not prevent her patient records and blood-test results from being released absent a court order. Thus, no law of the state of Ohio or the United States prohibits the hospital from supplying to the officer the results of the blood test administered to Pulaski. The exception to the physician-patient privilege in R.C. 2317.02(B)(2)(a) applies to the blood tests taken by the hospital the night of the accident. Pulaski's fifth assignment of error is without merit and is overruled.

### Appellant's sixth assignment of error

{¶ 61} Pulaski argues that the trial court erred in failing to suppress her blood-test results from the hospital because the state did not produce any evidence that the blood was drawn for purposes of diagnosis or treatment, which Pulaski asserts is a requirement for admissibility. We disagree.

{¶ 62} Pulaski argues that the state failed to present evidence that the blood drawn and tested by the hospital was taken for the purpose of diagnosis or treatment. However the state did present such evidence. Pulaski was in the emergency room of the hospital and was being treated by a physician for injuries she had sustained in the accident. The hospital's phlebotomist testified at trial that she had drawn the blood from Pulaski because "[t]he emergency doctor ordered trauma labs." Thus, the state presented evidence that Pulaski's blood had been drawn and tested by the hospital as part of the diagnosis and medical treatment for her injuries sustained in the accident. The sixth assignment of error is without merit and is overruled.

### Appellant's seventh assignment of error

{¶ 63} Pulaski's final assignment of error essentially argues that the trial court's judgment was against the manifest weight of the evidence. We agree.

{¶ 64} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. A judgment should be reversed as being

against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin,* supra, 20 Ohio App.3d at 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 65} Pulaski argues that even absent Lickert's testimony, her conviction was against the manifest weight of the evidence. At trial, the state presented the testimony of Phillips and Ladd. They testified that Pulaski had been driving them earlier in the evening and had been driving when they got into the car to leave Have a Nice Day Café. Additionally, the state offered evidence that Pulaski had repeatedly stated that she had been the driver of the car at the time of the accident. However, the physical evidence presented at the trial in the form of photographs, reports of injuries, and the location of the women in the vehicle after the accident do not corroborate Pulaski's statements that she was the driver.

{¶ 66} The evidence showed that after the accident Phillips was found in the area of the driver's seat of the vehicle and Pulaski was found on the front passenger side of the vehicle. Specifically, Phillips was pinned under the steering wheel between the driver's door and the steering wheel. She was found in essentially an upright position with her feet in the floor of the driver's seat. Her hair was stuck in the visor above the driver's seat, requiring it to be cut in order to free her from the vehicle. Additionally, Phillips had injuries to her face and missing teeth, which corresponded to the damage to the windshield just to the right of the steering wheel. Further, Phillips' blood was found on the steering wheel and in the driver's seat.

{¶ 67} In contrast, Pulaski was found in the front passenger seat of the vehicle with cuts to her right arm and the right side of her face. Similarly, the front passenger's window was broken as a result of the accident. Moreover, most damage to the vehicle was near the right front wheel, which appeared to be the area of impact. In particular, the gear shift was bent towards the right approximately 45 degrees and the front passenger seat was bent in a similar direction.

{¶ 68} The physical damage to the vehicle, the injuries to Phillips and Pulaski, and the positions of Phillips and Pulaski after the accident contradict the state's position that Pulaski was driving and Philips was in the backseat of the vehicle. In order for Phillips to have been moved by the accident from the backseat to her position after the accident, she would have had to have been thrown forward into the front seat through the limited distance between or above the front seats. Additionally, she would have had to have somehow been moved feet first so that her feet would land underneath her. Yet, she still would have had to have sufficient force to strike the windshield with her face causing her significant facial injuries and trap her hair in the visor. Moreover, this same force that moved

Phillips forward would have had to move Pulaski toward the right to move her from the driver's seat, over the console, and into the right front passenger's seat. Also, Phillips's movement from the back seat to the driver's seat during the accident would have to have happened in such a way that it would not impede Pulaski's movement from the driver's seat to the front passenger's seat. Considering the layout of the car and physical damage to the vehicle, it is unlikely that this movement occurred as argued by the state.

{¶ 69} We find that Pulaski's conviction was against the manifest weight of the evidence presented at trial. The manifest weight of the evidence at trial did not support the state's position that Pulaski was the driver of the vehicle. Pulaski's final assignment of error is sustained, and the matter is reversed and remanded for a new trial.

{¶ 70} The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for a new trial.

Judgment affirmed in part,
reversed in part
and cause remanded.

BROGAN, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

{¶ 71} The trial court's characterization of the accident-reconstruction expert's area of expertise as "junk science" implicates the reliability test for expert opinion announced in *Daubert v. Merrell Dow Pharmaceuticals* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. That test is now incorporated into Evid.R. 702(C), which requires the trial court to find that the basis for an expert's opinion satisfies a "threshold standard of reliability." Staff Note to Evid.R. 702 (July 1, 1994). In applying the test, the trial court performs a gatekeeper function, focusing on "the principles and procedures used by the expert, without regard to whether or not the court agrees with the conclusions that the expert draws from such principles and procedures." Weissenberger's Ohio Evidence, Treatise, Section 702.5 (2000 Ed.).

{¶ 72} Had the court sustained an Evid.R. 702 objection to the admissibility of the accident-reconstruction expert's opinion on a finding that the evidence lacks reliability, I agree that reversible error would then exist. Evidence of that kind has generally been viewed as sufficiently reliable, even prior to *Daubert* and the adoption of Evid.R. 702(C). See *Schaffter v. Ward* (1985), 17 Ohio St.3d 79, 17 OBR 203, 477 N.E.2d 1116. However, the court did not rule that the evidence is

inadmissible. The court instead rejected it on a finding that the expert's testimony "has no credibility and no weight."

{¶ 73} The court sat in this case as the trier of fact. The trier of fact may reject any evidence for lack of reliability. There is an overlap between the trier of fact's reliability determination and the reliability determination that Evid.R. 702(C) requires the court to make. The distinction can become blurred where, as here, the same person makes both determinations.

{¶ 74} The trial court made it very clear that it would have sustained an Evid.R. 702 objection had one been made, and would have excluded the expert's opinion on a finding that it is unreliable. No objection was made; indeed, the parties stipulated to the admissibility of the expert's testimony, and therefore to its reliability. The evidence was admitted. Instead, the court rejected the evidence on standards reserved to the trier of fact: weight and credibility.

{¶ 75} I cannot read an Evid.R. 702(C) ruling into the trial court's statement, even though it implicates Evid.R. 702(C) standards. When such distinctions are close, appellate courts must presume the regularity and correctness of the trial court's proceedings. *Conner v. Davis* (1958), 168 Ohio St. 251, 6 O.O.2d 387, 153 N.E.2d 669. The rule applies to a trial judge's factual findings concerning the weight and credibility of testimony offered. *Star Bank Natl. Assn. v. Cirrocumulus Ltd. Partnership* (1997), 121 Ohio App.3d 731, 700 N.E.2d 918. In this instance the factual finding was made by a very experienced trial court judge, whom we may presume understands the relevant distinction between law and fact. While I would not agree with him that the expert's opinion was "junk science," I cannot find that he exceeded his authority as the trier of fact in rejecting for lack of weight and credibility.