OPINION
{¶ 1} On August 1, 2003, defendant-appellant, Thomas Barrett, pled no contest to one count of aggravated vehicular assault in violation of R.C. 2903.08(A)(1), and one count of driving under the influence of alcohol ("DUI") in violation of R.C.4511.19(A)(1). After accepting the plea, the Butler County Court of Common Pleas found appellant guilty. Appellant appeals his conviction on the basis that the trial court improperly overruled both his motion in limine regarding the state's forensic toxicology expert witness, and his motion to suppress evidence of blood alcohol testing and statements made by him to two police officers and a paramedic.
 {¶ 2} According to the state, on October 2, 2003, at approximately 7 a.m., appellant was driving on State Route 744 when he crossed the center line and hit a vehicle driven by Dodi Wozniak head on in her lane of travel. Appellant and Wozniak were both severely injured as a result of the head-on collision. When Deputies Roy Chapman and Jay Young of the Butler County Sheriff's Office arrived at the scene of the accident, appellant was found in his car in the driver's seat with the door closed. Deputy Chapman asked appellant if he was injured and where he was coming from. Appellant stated he had just left work at AK Steel and was going home to Camden. Upon smelling an odor of alcohol in appellant's car, Deputy Chapman then asked appellant if he had any "alcoholic beverages to drink before the crash." Appellant replied "no."
 {¶ 3} Deputy Young also asked questions to appellant at the scene of the accident. When Deputy Young asked him where he was headed, appellant replied he was on his way home. After Deputy Young commented, "so you work midnights?" appellant replied he was not but that he had been "out all night drinking with his buddies." After the deputy further commented, "well, what you are telling me then is [that] you were drunk," appellant stated he had nothing else he wanted to say to the deputy. Nothing further was asked by either of the deputies at the scene.
 {¶ 4} Paramedics were also dispatched to the scene of the accident. Paramedic Kathy Faine provided initial treatment for appellant and as part of her care asked him standard questions. One such question was whether appellant had been drinking. Appellant told Faine he had been drinking a lot since the night before. Faine did not recall if the fact that appellant had been drinking alcohol was orally communicated to the personnel of the hospital to where appellant was eventually transported. Faine testified, however, that the fact that appellant had been drinking alcohol was included in a written report which was put into a basket at the hospital's emergency nurse's station.
 {¶ 5} After appellant was transported to McCullough-Hyde Hospital in Oxford, Ohio, an open can of beer was recovered on the floorboard of his car. At the hospital, a phlebotomist drew blood from appellant and ran several tests on the blood. The blood was not drawn at the direction of the state, but rather, was drawn for medical purposes only. No law enforcement officer was present during the drawing of the blood. A blood alcohol test done for medical purposes for the hospital revealed that appellant had a serum ethanol level of.131 weight-percent (grams per deciliter).
 {¶ 6} Deputy Chapman eventually arrived at the hospital and asked appellant if he would submit to a blood alcohol test. Appellant initially agreed. However, upon being read a BMV 2255 form, appellant subsequently refused to sign the form, stating he would rather wait before he gave blood. Several days later upon appellant's discharge from the hospital, Deputy Young came to the hospital to pick up appellant and transport him to jail. Deputy Young testified he made no attempt to talk to appellant while transporting him, especially since appellant was heavily sedated. During the ride, appellant made the statement "I made a big mistake."
 {¶ 7} On December 27, 2002, appellant was indicted on two counts of aggravated vehicular assault and one count of DUI. Appellant moved to suppress his statements to the deputies as well as his admission to Paramedic Faine that he had been drinking. Appellant also moved to suppress the result of the blood alcohol test on the ground that the testing was not done in accordance with Ohio Department of Health ("ODH") regulations. Appellant also filed a motion in limine seeking to prevent Dr. Harry Plotnik, a consultant in forensic toxicology, from testifying as the state's expert witness regarding appellant's intoxication at the time of the accident. Following hearings on the motions, the trial court denied the motions. Appellant then pled no contest and was convicted as described above. This appeal follows in which appellant raises three assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "The court below utilized the wrong standard in deciding the appellant's suppression motion."
 {¶ 10} When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. Statev. Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v.Retherford (1994), 93 Ohio App.3d 586, 592. Relying on the trial court's findings, the appellate court determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 11} In the case at bar, appellant moved to suppress the results of the blood alcohol test on the ground that the test was not conducted in accordance with ODH regulations as codified in Ohio Adm. Code Chapter 3701-53. Applying a substantial compliance standard, the trial court found that the test was conducted in "substantial compliance with the Ohio Department of Health Regulations" and denied appellant's motion to suppress. Specifically, citing to State v. Plummer (1986),22 Ohio St.3d 292, the trial court noted that "Rigid compliance with the Ohio Department of Health Regulations is not required and absent prejudice to the Defendant, if the prosecution shows substantial compliance with the regulations the results of the alcohol tests may be admitted into evidence. * * * Substantial compliance is not strict compliance where the procedures employed are likely to achieve the same results as that specified in the rule."
 {¶ 12} On appeal, appellant argues that the trial court "used the wrong standard" in determining substantial compliance. Appellant contends that the trial court should have applied the Ohio Supreme Court's decision in State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372. Appellant contends that had the trial court applied Burnside, the results of the blood alcohol test would have been suppressed as the performance of the test involved more than minor procedural deviations from ODH regulations. We note that the trial court cannot be faulted for not applying Burnside as this case was decided several monthsafter the trial court denied appellant's motion to suppress.
 {¶ 13} In Burnside, the supreme court examined "the parameters of the `substantial compliance' standard" in determining the admissibility of alcohol-test results regulated by Ohio Adm. Code Chapter 3701-53. The court reiterated that strict compliance with the ODH regulations is not required for test results to be admissible, as "strict compliance is not always realistic or humanly possible." Id. at ¶ 34. However, the court "limit[ed] the substantial-compliance standard set forth inPlummer to excusing only errors that are clearly de minimis[,]" that is, those errors that are "minor procedural deviations." Id.
 {¶ 14} Burnside involved the prosecution of a motorist for driving with a prohibited blood alcohol level in violation of R.C. 4511.19(A)(2). Appellant, on the other hand, was prosecuted for DUI in violation of R.C. 4511.19(A)(1). In Newark v. Lucas
(1988), 40 Ohio St.3d 100, the Ohio Supreme Court differentiated between per se violations under R.C. 4511.19(A)(2)-(5) and violations under R.C. 4511.19(A)(1):
 {¶ 15} "The per se offenses define `the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others. * * * In determining whether one of per se offenses was committed by the defendant, the trier of fact [is only required to find] that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed level. The critical issue * * * is the accuracy of the test, not the behavior of the accused." Id. at 103. Because the results of a blood alcohol test are clearly an element of the proof of the per se offenses, the results of such tests and their accuracy are crucial to a determination of guilt or innocence. Id. As a result, "[a] detailed procedure is set forth in R.C. 4511.19 and Ohio Adm. Code 3701-53 to ensure the accuracy of these tests."State v. Swingle (May 4, 1998), Warren App. Nos. CA97-09-094 and CA97-09-096, at 9.
 {¶ 16} By contrast, in prosecutions for violations of R.C.4511.19(A)(1), the amount of alcohol found as a result of a blood alcohol test "is only of secondary interest." Newark,40 Ohio St.3d at 104. Unlike the per se offenses, the crucial issue in a R.C. 4511.19(A)(1) prosecution is the behavior of the defendant, his ability to perceive, make judgments, coordinate movements, and safely operate a motor vehicle. Id. "The accuracy of the test is not the critical issue as it is in prosecutions for per se violations. * * * The test results, if probative, are merely considered in addition to all other evidence of impaired driving * * *." Id.
 {¶ 17} In Mason v. Murphy (1997), 123 Ohio App.3d 592, we held that while failure to substantially comply with ODH regulations renders blood test results inadmissible in a prosecution for driving with a prohibited blood alcohol level, it does not necessarily follow that the test results are also inadmissible in a prosecution for driving under the influence. Id. at 597. "[I]n a criminal prosecution for driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1), the results of a properly administered bodily substances test presented with expert testimony may be admitted into evidence despite a lack of literal compliance with the requirements of R.C. 4511.19." State v. Quinones (Feb. 14, 1996), Lorain App. No. 95CA006084, 1996 WL 62578, at *7. See, also, State v.Wells, Greene App. No. 2003 CA 68, 2004-Ohio-1026 (whereas failure to comply with Ohio Adm. Code Chapter 3701-53 precludes admission of test results for per se violations of R.C.4511.19[A], such deficiencies do not necessarily render results inadmissible for violations of R.C. 4511.19[A][1]. In subsection [A][1] prosecution, trial court should be able to admit properly administered chemical test analysis, even one performed by laboratory that does not comply with ODH regulations, if presented with expert testimony).
 {¶ 18} In light of the foregoing, including the supreme court's decision in Newark, we find that the trial court did not "use the wrong standard" when it applied the pre-Burnside
substantial compliance standard, and when it admitted the results of appellant's blood alcohol test upon finding that the test was properly administered in substantial compliance with ODH regulations. Appellant's first assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "The court should have granted the appellant's motion in limine."
 {¶ 21} Appellant argues that the trial court erred by denying his motion in limine regarding Dr. Harry Plotnik. The motion sought to prevent Dr. Plotnik, a consultant in forensic toxicology, from testifying as an expert witness about appellant's intoxication at the time of the accident. At a hearing on the motion, Dr. Plotnik explained how he evaluated the blood alcohol test results obtained from appellant at the hospital through a procedure known as retrograde extrapolation.[1] By this procedure, Dr. Plotnik estimated appellant's blood alcohol level at the time of the accident. On appeal, appellant does not contest Dr. Plotnik's expert qualifications. Rather, appellant argues that because Dr. Plotnik did not know when appellant stopped drinking and when the head-on collision actually occurred, his testimony was unreliable and speculative, and thus should have been suppressed under Evid.R. 702(C)(3).
 {¶ 22} A trial court has broad discretion in determining whether to admit or exclude expert testimony, and thus, will not be reversed on appeal absent an abuse of discretion. State v.Jones, 90 Ohio St.3d 403, 414, 2000-Ohio-187. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. State v. Pulaski, 154 Ohio App.3d 301,2003-Ohio-4847, ¶ 18. If the elements listed in Evid.R. 702 are satisfied, then the admission of expert testimony is favored. Id.
 {¶ 23} Evid.R. 702 allows the admission of expert testimony where the witness' testimony relates to matters beyond the knowledge or experience of lay persons; the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and the witness' testimony is based on reliable scientific, technical, or other specialized information. Evid.R. 702(A)-(C). In turn, Evid.R. 702(C)(3) provides that "[t]o the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if * * * [t]he particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 24} A trial court's role in determining whether an expert's testimony is admissible under Evid.R. 702(C) focuses on whether the opinion is based upon scientifically valid principles, not on whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial. Miller v. Bike Athletic Co., 80 Ohio St.3d 607,613-613, 1998-Ohio-178.
 {¶ 25} We find that the trial court did not abuse its discretion by admitting Dr. Plotnik's retrograde extrapolation testimony. Dr. Plotnik explained that based upon appellant's blood alcohol test results and the time of the accident as supplied by the state, he "did a computation based upon the generally accepted rate of disappearance of alcohol from the bloodstream from a peak time, and back extrapolated that to determine what [appellant's] blood alcohol concentration would have been in this case at the time of the collision." While Dr. Plotnik indeed did not know when appellant stopped drinking before the accident, he did testify that he assumed 30 minutes elapsed between appellant's last drink and the head-on collision. Dr. Plotnik explained that he picked 30 minutes because "there was no other factual basis at this time [and he] ha[d] to go from somewhere."
 {¶ 26} Likewise, although he did not know exactly when the accident occurred, Dr. Plotnik explained he usually estimates a time of accident based upon the time a call is placed to dispatch help to the scene of the accident. In addition, he testified that he estimated appellant's blood alcohol content based upon the time of the accident as provided to him by the state.
 {¶ 27} Upon carefully reviewing Dr. Plotnik's testimony, we cannot say that Dr. Plotnik's retrograde extrapolation analysis was conducted in a way that will yield inaccurate results. SeeState v. Roberts (June 29, 1998), Butler App. No. CA97-10-186 (where Dr. Plotnik's retrograde extrapolation testimony was found to be properly admitted at trial even though Dr. Plotnik assumed the accident took place at a certain time and assumed the defendant did not consume alcohol after the accident). Appellant's objections to the speculative nature of Dr. Plotnik's testimony go to the weight, and not the admissibility, of the evidence. See Id. Upon reviewing Dr. Plotnik's testimony in light of Evid.R. 702(C)(3), we simply cannot say that the trial court's ruling was so unreasonable, arbitrary, or unconscionable as to connote an abuse of discretion. Appellant's second assignment of error is overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "The court should have granted the appellant's motion to suppress statements."
 {¶ 30} Under this assignment of error, appellant first argues that the trial court erred by not suppressing his statements to Deputies Chapman and Young. Appellant contends that his statements to the deputies, be it at the scene of the accident, at the hospital, or during the ride to jail, should have been suppressed because he was not given Miranda warnings. We disagree.
 {¶ 31} It is well-established that Miranda warnings only apply when an interrogation occurs. State v. Knuckles,65 Ohio St.3d 494, 496, 1992-Ohio-64. An interrogation, as conceptualized in Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, must reflect a measure of compulsion above and beyond that inherent in custody itself before it will be considered a "custodial interrogation." Rhode Island v. Innis (1980), 446 U.S. 291,300, 100 S.Ct. 1682; State v. Tucker, 81 Ohio St.3d 431, 435,1998-Ohio-438. The duty to advise a suspect of his constitutional rights arises only when questioning by law enforcement officers rises to the level of a custodial interrogation. State v. Gumm,73 Ohio St.3d 413, 429, 1995-Ohio-24, certiorari denied (1996),516 U.S. 1177, 116 S.Ct. 1275.
 {¶ 32} General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not constitute a custodial interrogation. Miranda, 384 U.S. at 477,86 S.Ct. 1602. That is because such general questioning is only an attempt to elicit basic facts relative to the officer's investigation. See State v. Rivera-Carrillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013. Miranda warnings are therefore not required during a police officer's roadside questioning of a motorist at the scene of an automobile accident "because the questioning constitute[s] on-scene questioning done as part of the normal fact-finding process and not custodial interrogation." State v.Garland (1996), 116 Ohio App.3d 461, 470.
 {¶ 33} We find that the trial court was correct in refusing to suppress appellant's statements to Deputies Chapman and Young at the scene of the accident. The deputies' questions to appellant were merely on-the-scene inquiries done as part of the normal fact-finding process. The questioning by both deputies did not therefore constitute custodial interrogation. Likewise, we find that Deputy Chapman's act at the hospital of asking appellant if he would submit to a blood alcohol test and his reading of the BMV 2255 form did not rise to the level of a custodial interrogation. As noted earlier, an interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself before it will be considered a "custodial interrogation." Innis, 446 U.S. at 300, 100 S.Ct. 1682. The trial court was therefore correct in refusing to suppress appellant's statements to Deputy Chapman at the hospital.
 {¶ 34} We also find that the trial court was correct in refusing to suppress appellant's statement to Deputy Young during the ride between the hospital and jail. A defendant's voluntary, unprovoked statements to police while riding in a cruiser en route to jail do not fall within the protection of Miranda,
even though the defendant has been placed under arrest. State v.Becherer (Feb. 14, 2000), Warren App. No. CA99-07-085, at 6. The record shows that the deputy did not talk to appellant at all during the ride. Thus, appellant's statement "I made a big mistake" was unprovoked and was voluntarily and spontaneously made without any coercion or inducement by the deputy.
 {¶ 35} We therefore find that the trial court properly denied appellant's motion to suppress his statements to Deputies Chapman and Young.
 {¶ 36} Appellant also argues that the trial court erred by not suppressing his statement to Paramedic Faine that he had been drinking a lot since the night before. Appellant contends that his statement to Faine falls within the physician-patient privilege and therefore should have been suppressed. Appellant's argument is overruled on the basis of State v. Wetta, Butler App. No. CA2001-08-184, 2002-Ohio-2597, in which we held that "information obtained by a paramedic when giving emergency care to an individual is not a privileged communication falling within the protection of the physician-patient privilege." Id. at ¶ 16. The trial court was therefore correct in refusing to suppress appellant's statement to Faine. Appellant's third assignment of error is overruled.
 {¶ 37} Judgment affirmed.
Powell and Valen, JJ., concur.
[1] "Retrograde extrapolation is a method of estimating a person's blood alcohol level at a specified time by using the person's known blood alcohol content at a later time." Wallis v.Carco Carriage Corp., Inc. (C.A.10, 1997), 1997 WL 580498, at *7.