[Cite as *State v. Ossege*, 2014-Ohio-3186.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                      :

          Plaintiff-Appellee,          :

                                    :

   - vs -

                                    :

ANTHONY OSSEGE,            :

          Defendant-Appellant.      :

CASE NOS. CA2013-11-086
CA2013-11-087

O P I N I O N
7/21/2014

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case Nos. 12 CRB 6454 and 12 TRC 18403

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Gary A. Rosenhoffer, 313 East Main Street, Batavia, Ohio 45103, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Anthony Ossege, appeals from his convictions in the

Clermont County Municipal Court for  driving while under the influence of alcohol or drugs

(OVI) in violation of R.C. 4511.19(A)(1)(j)(viii)(II), and two counts of endangering children in

violation of R.C. 2919.22(C).  For the reasons set forth below we affirm.

## I. FACTS

{¶ 2}  Ossege was involved in an automobile accident when his vehicle struck two

pedestrians on November 29, 2011. The incident occurred at 5:30 p.m. when Ossege, while proceeding eastbound on State Route 125 in Amelia, Ohio, struck two pedestrians who had entered the roadway. One pedestrian died as a result of the accident. Ossege's two children were also in the vehicle, but were not injured.

{¶ 3} Officer Greg Marsh of the Amelia Police Department was dispatched to the scene. Upon arriving, Officer Marsh did not observe any objective signs of impairment in Ossege. Officer Marsh asked if Ossege had consumed any drugs or alcohol, which Ossege denied. While at the scene, Officer Marsh requested Ossege write a statement; however, based on his distraught state, Ossege was unable to provide any details surrounding the accident. Accordingly, Officer Marsh asked Ossege, "if he'd like to go back to the office where it was a nice, quiet setting," in order to write his statement. According to Officer Marsh, Ossege "agreed and [he] transported him to the office." At the station, Ossege provided a second statement and at the request of Officer Marsh, also provided a urine sample. Ossege was not arrested or charged with any crimes relating to the accident or the death of the pedestrian.

{¶ 4} The urine sample was kept in the refrigerator at the Amelia Police Department for two days and then it was mailed to the Ohio State Highway Patrol crime lab for analysis. Test results indicated the presence of 356.16 nanograms of marihuana metabolite per milliliter of his urine. On December 9, 2012, Ossege was charged with one count of operating a motor vehicle with at least 35 nanograms of marihuana metabolite in his urine and two counts of endangering children.

{¶ 5} Ossege filed a motion to suppress the urine analysis claiming (1) his consent was not voluntary; and (2) the testing of the sample failed to comply with Ohio Adm.Code 3701-53-05(E). The trial court denied the motion. Ossege filed a subsequent motion to suppress or motion in limine challenging the constitutionality of certain provisions of R.C.

4511.19. The trial court also denied this motion.

{¶ 6} The case proceeded to a jury trial. At the close of the state's case and again at the close of his own case, Ossege moved for acquittal on all charges. The trial court denied both motions. Prior to submitting the case to the jury, Ossege requested the trial court to provide three jury instructions regarding the weight to be given to certain evidence. The trial court found the requested instructions were not proper statements of law and denied his request.

{¶ 7} The jury found Ossege guilty on all three counts. Ossege was subsequently sentenced and now appeals his convictions raising four assignments of error for our review.

## II. ANALYSIS

## A. MOTION TO SUPRESS

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED OSSEGE'S MOTION TO SUPRESS.

{¶ 10} In his first assignment of error, Ossege contends the trial court erred in failing to suppress the results of his urine test. Ossege asserts these test results should have been suppressed because his urine was seized in violation of his constitutional rights, and the urine was not properly handled or analyzed pursuant to the Ohio Department of Health (ODH) regulations, Ohio Adm.Code 3701-53-05(E)(1)(a).

{¶ 11} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Dugan*, 12th Dist. Butler No. CA2012-04-081, 2013-Ohio-447, ¶ 10, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Eyer*,

- 3 -

12th Dist. Warren No. CA2007-06-071, 2008-Ohio-1193, ¶ 8. In turn, the appellate court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Dugan* at ¶ 10. After accepting the trial court's factual findings as true, the appellate court must then determine, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. *State v. Lange*, 12th Dist. Butler No. CA2007-09-232, 2008-Ohio-3595, ¶ 4. Keeping this standard in mind, we review Ossege's specific arguments.

### 1. Seizure of Ossege's Urine

{¶ 12} Ossege argues the trial court erred in denying his motion to suppress because the evidence failed to demonstrate he voluntarily consented to the seizure of his urine. Ossege contends the state failed to prove his consent was constitutionally valid because his urine was obtained without a warrant and because he was never informed he did not have to provide the urine sample. The state, however, asserts Ossege voluntarily consented to the gathering and testing of his urine.

{¶ 13} The collection and testing of urine indeed constitutes a search and seizure under the Fourth Amendment. *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 617, 109 S.Ct. 1402 (1989). The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Dennis*, 12th Dist. Warren No. CA2012-01-004, 2012-Ohio-4877, ¶ 13. Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the few specifically established and well-delineated exceptions. *State v. Durham*, 12th Dist. Warren No. 2013-03-023, 2013-Ohio-4764, ¶ 31. One such exception occurs when a person consents to a warrantless search. *State v. Oberding*, 12th Dist. Warren No. CA2011-09-101, 2012-Ohio-3047, ¶ 13, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 93, S.Ct. 2041 (1973).

- 4 -

{¶ 14} When the state attempts to justify a warrantless search on the basis of consent and the subject of the search is not in custody, the Fourth and Fourteenth Amendments require the state to demonstrate that the consent was, in fact, voluntarily given and not the result of duress or coercion, express or implied. *State v. Smith*, 12th Dist. Warren No. CA2012-03-022, 2012-Ohio-5962, ¶ 18, citing *Schneckloth* at 248-249; *see also State v. Robinette*, 80 Ohio St.3d 234, 242-243 (1997). In addition to coercion or duress, other factors to be considered when determining whether consent was voluntary include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse consent; and (7) the suspect's education and intelligence. *State v. Dean*, 12th Dist. Fayette No. CA2013-03-007, 2014-Ohio-448, ¶ 12; *State v. Sinha*, 12th Dist. Butler No. CA2012-11-237, 2013-Ohio-5203, ¶ 15. While the subject's knowledge of a right to refuse is indeed a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. *Smith* at ¶ 19, citing *Robinette* at 244-243 and *Schneckloth* at 248-249.

{¶ 15} The burden is on the state to prove by clear and convincing evidence that the defendant's consent was freely and voluntarily given. *State v. Vansickle*, 12th Dist. Fayette No. CA2013-03-005, 2014-Ohio-1324, ¶ 66, citing *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 43. Voluntariness is a question of fact to be determined from all of the circumstances. *Smith* at ¶ 19.

{¶ 16} There is simply nothing in the record to suggest Ossege's decision to submit to the urine test was anything but voluntary. At the suppression hearing, Officer Marsh testified that while at the scene of the accident, Ossege denied having consumed any alcohol or

illegal drugs. Furthermore, Officer Marsh's interactions with Ossege on the night of the accident did not cause Officer Marsh to believe Ossege was under the influence of alcohol or drugs. Officer Marsh testified the reason Ossege was transported to the police department was because Ossege was too "distraught" to provide an adequate statement at the scene. Moreover, Officer Marsh stated he simply asked Ossege to submit to the urine sample, "to cover my bases. In a severe injury or fatal accident we like to do a full investigation to make sure that there are no stones left unturned." According to Officer Marsh, Ossege voluntarily consented and provided the sample. Ossege did not testify or offer any evidence which disputed the officer's statements.

{¶ 17} After considering the totality of the circumstances and weighing the factors set forth above, we find Ossege voluntarily consented to providing the urine sample. Although the record indicates Ossege gave his consent while at the police station and he argues he was not informed of his right to refuse consent, the remaining factors demonstrate that Ossege's consent was voluntary and freely given.[1] Specifically, at the time the urine sample was requested, Ossege was not in custody or otherwise detained. Rather, the record demonstrates he voluntarily agreed to be transported to the police department by Officer Marsh in order to provide a more detailed statement of the incident. As such, Ossege was merely being cooperative in facilitating the investigation into this fatal accident. In addition, there is nothing in the record that indicates any threats or promises were made by Officer Marsh or that Ossege's submission to the test was a result of coercive police procedures. There is also no indication that Ossege is of limited intelligence or was otherwise unable to understand the officer's requests or instructions. Finally, we note, although Ossege was

---

1. Although Ossege argues he was not informed he could refuse to provide the urine sample, the record from the suppression hearing is silent regarding what Officer Marsh told him prior to taking the sample. Officer Marsh testified he requested the sample and Ossege "agreed;" he voluntarily "consented." The record is silent regarding any other details surrounding Officer Marsh's request for the urine sample.

emotionally distraught while at the scene, there is every indication that while at the police station, he was capable of questioning Officer Marsh's motives in requesting the urine sample, and therefore did not simply submit to the officer's claim of lawful authority. *See Smith* at ¶ 20.[2]

{¶ 18} Based on the foregoing, there is simply nothing in the record to suggest Officer Marsh compelled or coerced Ossege in any way to provide the urine sample. Accordingly, we find the trial court did not err in denying Ossege's motion to suppress on the basis that he voluntarily consented to the urine test.[3]

### 2. Failure to Comply with Ohio Adm.Code 3701-53-05(E)(1)

{¶ 19} In Ossege's motion to suppress, he also argued his urine sample was not collected or tested in substantial compliance with Ohio Adm.Code 3701-53-05(E). Specifically, he asserted the state failed to show his name was placed on the urine sample as required by Ohio Adm.Code 3701-53-05(E)(1). Due to this violation of the regulations and because the sample remained in the refrigerator where approximately nine people had access to it prior to it being sent for testing, Ossege contends it is questionable whether the urine sample actually belonged to him. Accordingly, Ossege argues the test results should have been suppressed.

---

2. We note Ossege argued in his reply brief that he was in custody at the time his urine was seized, and that Officer Marsh should have therefore advised him of his *Miranda* rights. However, the record indicates Officer Marsh simply engaged in general questioning at both the scene and at the police department, and requested the urine sample from Ossege in order to conduct a "full investigation" into the motor vehicle accident and the related fatality. Furthermore and as noted above, Ossege was not in custody at this time. Accordingly, Officer Marsh was not required to inform Ossege of his rights under *Miranda*. *See State v. Barrett*, 12th Dist. Butler No. CA2003-10-261, 2004-Ohio-5530, ¶ 32 (finding *Miranda* warnings are not required where an officer's roadside questioning of a motorist at the scene of an automobile accident is done as part of the normal fact-finding process and not a custodial interrogation).

3. Ossege also argues he did not implicitly consent to the seizure of his urine as permitted pursuant to R.C. 4511.191. Because we have found he provided actual consent, we need not discuss whether there was also implied consent for providing the urine sample. *See also City of Fairfield v. Regner*, 23 Ohio App.3d 79, 85 (12th Dist.1985) (finding voluntary consent constitutes actual consent and relieves the state from establishing the prerequisites of implied consent under R.C. 4511.191).

{¶ 20} In the prosecution of offenses for driving with a prohibited concentration of a controlled substance or its metabolite, the court may admit evidence of the concentration of metabolites in a defendant's urine at the time of the alleged violation as shown by a chemical analysis. R.C. 4511.19(D)(1)(b). However, the sample must be analyzed in accordance with methods approved by the director of health. R.C. 4511.19(D)(1)(b); *see also* R.C. 3701.143; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 9. Accordingly, the Director of Health promulgated the following blood and urine testing regulations in Ohio Adm.Code 3701-53-05(E):

> (E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains at least the following information:
> (1) Name of suspect;
> (2) Date and time of collection;
> (3) Name or initials of person collecting the sample; and
> (4) Name or initials of person sealing the sample.

{¶ 21} Once a defendant challenges the validity of a chemical analysis test by filing a motion to suppress, the state has the burden of proving substantial compliance with the regulations prescribed by the Ohio Department of Health (ODH). *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 49; *Burnside* at ¶ 24. "Substantial compliance is limited to excusing only deviations from the regulations that are 'clearly de minimis,' i.e. irregularities amounting to 'minimal procedural deviations.'" *Dugan*, 2013-Ohio-447 at ¶ 32, quoting *Burnside*, 2003-Ohio-5372 at ¶ 34. Deviations from the regulations such as minor misspellings of the defendant's name on the sample have been found to be "nothing more than a de minimus error." *State v. Balog*, 9th Dist. Medina No. 08CA0001-M, 2008-Ohio-4292, ¶ 25. Once the state has met its burden, a presumption of admissibility is created, and the burden then shifts to the defendant to rebut that presumption by demonstrating he was prejudiced by anything less than strict compliance. *Dugan* at ¶ 32, citing *Burnside* at ¶ 24.

{¶ 22} At the suppression hearing, Emily Adelman, a criminalist with the Ohio State

- 8 -

Highway Patrol testified the state had failed to strictly comply with the regulations. Specifically, Adelman noted that neither the label on the sample nor the container itself contained the suspect's name. Adelman explained the container had an adhesive label that went over the top of the sample, which contained spaces for the suspect's name, the collector's initials or name, and the date and time of collection to be written in, and all of these fields were filled out except for the suspect's name. Accordingly, the state failed to strictly comply with Ohio Adm.Code 3701-53-05(E). However, the record supports the trial court's conclusion that Officer Marsh's collection of the urine sample substantially complied with Ohio Adm.Code 3701-53-05(E).

{¶ 23} Officer Marsh testified he observed Ossege urinate in a clean bottle. Officer Marsh then sealed the bottle, marked it with his name, the date of collection, sealed it back into the box, placed the box into a paper evidence bag, and then placed the bag in the refrigerator at the Amelia Police Department. The sample was mailed to the Ohio State Patrol crime lab two days later by Chief Wallace. At the time he collected the sample, Officer Marsh stated he also filled out the Ohio State Highway Patrol evidence submission sheet (submission sheet). The submission sheet was admitted into evidence and essentially detailed the chain of custody for the sample. This form listed Ossege's name, the date and time of collection, and Marsh's initials as he collected and sealed the sample. Adelman also identified the submission form and further detailed the movement of the sample through the lab, including receiving it, logging it, and conducting the requisite tests. Finally, on further redirect examination, Officer Marsh identified the sample as the particular bottle he saw Ossege urinate in and stated he was certain the urine was Ossege's.

{¶ 24} Based on this record, we find that the omission of Ossege's name on the sample was nothing more than a de minimus error. The sample contained other information, including Officer Marsh's initials and the November 29, 2011 date of collection, which

uniquely identified the sample as Ossege's sample. Moreover, the submission sheet submitted with the sample contained all of the information required by Ohio Adm.Code 3701-53-05, including Ossege's name. Accordingly, when the label is viewed as a whole, and in conjunction with the submission sheet, we find the state substantially complied with the ODH regulations. *See Burnside* at ¶ 34; *Balog* at ¶ 25.

{¶ 25} Moreover, there is no evidence Ossege suffered any prejudice as a result of this single procedural deviation from strict compliance with the code. "The purpose of the sealing requirements described in Ohio Adm.Code 3701-53-05(E) is to insure that the blood or urine specimen is the same specimen that was placed in its the container by the person who collected it from the defendant, and that it is in the same condition as when it was put there." *State v. Roberts*, 1st Dist. Hamilton No.C-080474, 2009-Ohio-1799, ¶ 6. Ossege suggests the sample could have been tampered with because approximately nine people had access to it before it was sent to the crime lab. However, there was no evidence presented which indicated the sample had been tampered with or disturbed. In fact, Officer Marsh testified he sealed the sample prior to placing it in the refrigerator and Adelman confirmed that the crime lab's internal records indicated the sample was sealed at the time it was received. In addition, Officer Marsh testified he was certain the urine in the sample was the urine he collected from Ossege. Finally, the testimony of Officer Marsh and Adelman demonstrated a clear chain of custody for the sample. Therefore, there was little doubt the sample belonged to Ossege.

{¶ 26} Based on the foregoing, we find the state established substantial compliance with the applicable regulations regarding urine testing and Ossege failed to establish he was prejudiced by the state's failure to strictly comply with Ohio Adm.Code 3701-53-05(E). Therefore, the trial court did not err in denying his motion to suppress on this basis.

{¶ 27} As the trial court properly denied Ossege's motion to suppress, his first

assignment of error is overruled.

## B. Motion to Suppress or in Limine

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED OSSEGE'S MOTION TO SURPESS OR IN LIMINE.

{¶ 30} In his second assignment of error, Ossege argues the trial court erred by denying his motion to suppress or in limine. In this motion, Ossege again sought to exclude or otherwise suppress the evidence of the amount of marihuana metabolites found in his urine from being introduced at trial. Ossege argued that certain provisions of R.C. 4511.19 are unconstitutional and urged the trial court to undertake its "gatekeeper function" and ascertain whether the stated amount of metabolites of marihuana provided in R.C. 4511.19(A)(1)(j)(viii)(II), as a matter of scientific fact, resulted in impairment. Ossege requested the court exclude the tests results based on Officer Marsh's testimony from the motion to suppress hearing that he did not believe Ossege was under the influence of alcohol or drugs. The trial court denied the motion.

{¶ 31} On appeal, Ossege asserts R.C. 4511.19(A)(1)(j)(viii)(II) is unconstitutional because it includes a conclusive presumption that one is under the influence by virtue of the presence of a marihuana metabolite which may not have any "relationship to being under the influence of, or being impaired by the use of marihuana." Ossege argues this statutory scheme is unconstitutional as it usurps the trial court's gatekeeping function. Although he asserts the statute is constitutionally questionable because it encroaches upon the trial court's gatekeeping function, Ossege's real objection to the statute seems to be the General Assembly's decision to criminalize driving with the presence of a marihuana metabolite in one's system as science has arguably found such metabolites may not itself cause or equate to impairment.

**{¶ 32}** The First District Court of Appeals recently considered and rejected arguments similar to those now presented by Ossege. *State v. Whalen*, 1st Dist. Hamilton No. C-120449, 2013-Ohio-1861. In *Whalen*, appellant pled no contest to operating a motor vehicle with at least 35 nanograms of marihuana metabolite in his urine in violation of R.C. 4511.19(A)(1)(j)(viii)(II). Appellant also filed a motion to suppress, arguing R.C. 4511.19(A)(1)(j)(viii)(II) was unconstitutional. Although appellant's arguments were couched in terms of vagueness and overbreadth, the court noted his "real quibble seems to be with the legislative decision to criminalize driving based upon the presence of a marihuana metabolite that may not itself cause impairment." *Whalen* at ¶ 16. In rejecting appellant's constitutional challenges, the First District stated:

> [T]he presence of a marihuana metabolite in one's system indicates that one has used marihuana, an illegal drug in Ohio. Furthermore, THC, the active ingredient in marihuana, leaves the body relatively quickly. Unlike the case with Breathalyzer tests, which are commonly administered by police during roadside stops, it may take some time before police are able to transport and administer a blood or urine test to a suspected drugged driver. Accordingly, the legislative decision to include marihuana metabolites within the per se prohibition is not unreasonable.

*Whalen* at ¶ 16.

**{¶ 33}** We agree with the First District and find the legislature's decision to include marihuana metabolites within the per se prohibitions of R.C. 4511.19 is not unreasonable. *Id.* The General Assembly has made it illegal to not only operate a vehicle under the influence of alcohol or a drug of abuse, but also to operate a vehicle with a proscribed level of alcohol or a drug of abuse in one's system. *See* R.C. 4511.19; *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, ¶ 18. R.C. 4511.19(A)(1)(b)-(j) and (B), the "per se" offenses, prohibit the operation of a motor vehicle with certain concentrations of alcohol and/or drugs of abuse in a person's blood, breath, or urine. *See State v. Davenport*, 12th Dist. Fayette No. CA2008-01-011, 2009-Ohio-557, ¶ 11, fn. 2. R.C. 4511.19(A)(1)(j)(viii)(II), like the other per

se offenses, simply defines the point at which the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others. *See State v. Barrett*, 12th Dist. Butler No. CA2003-10-261, 2004-Ohio-5530, ¶ 15, citing *Newark v. Lucas*, 40 Ohio St.3d 100, 103 (1988). Contrary to Ossege's arguments, the General Assembly was well within its police powers to set a prohibited amount of marihuana, an illegal substance in Ohio, which may be in one's system while operating a vehicle, and consequently criminalize driving with more than 35 nanograms of marihuana metabolites in one's system.[4] Driving is a privilege rather than a constitutional right, and the state has a legitimate interest in highway safety and keeping impaired drivers off the road. *State v. Tanner*, 15 Ohio St.3d 1, 3 (1984); *see also Whalen* at ¶ 17.

{¶ 34} Moreover, we note the trial court still maintains its gatekeeping function in the prosecution of R.C. 4511.19(A)(1)(j)(viii)(II) cases. In determining whether a defendant violated R.C. 4511.19(A)(1)(j)(viii)(II), the critical issue is the accuracy of the test, not the behavior of the accused. *See Barrett* at ¶ 14, citing *Lucas* at 103. Accordingly, the result of such tests and their accuracy are crucial to a determination of guilt or innocence. Even given the provisions of R.C. 4511.19(D), the trial court still has the authority and responsibility to regulate the admission of test results and to evaluate whether (1) ODH regulations were followed, or (2) the operator of the instrument was qualified. *See Dugan*, 2013-Ohio-447 at ¶ 18, 28. In addition, the defendant is also permitted to challenge the reliability of the specific testing procedure by showing "something went wrong with his test and that, as a

---

4. The General Assembly, in constructing R.C. 4511.19(A)(1)(j)(viii)(II), expressly considered arguments of those who claimed the law lacked a direct correlation between the prohibited amount of marihuana and its metabolite in a driver's system and impairment. Senator Steve Austria, one of the bill's sponsors, recognized that certain drivers may not be subjectively impaired when driving with the prohibited amount of marihuana in their system, yet by setting a concrete amount, the bill created a "level playing field." *See* 2005 OH Sub.S.B. 8, Third Consideration, available at http://www.ohiochannel.org, Ohio Senate Session (Feb. 16, 2005) 14:15:57 (accessed June 24, 2014). In addition, both Senator Austria and Senator Patricia Clancy noted that during deliberations on the bill, the forensic experts and toxicologists who testified unanimously agreed that anyone driving with the levels of the substance listed in the bill would definitely be impaired. *Id.*; *Whalen* at ¶ 16, fn. 2.

consequence, the result was at variance with what the approved testing process should have produced.'" *Id.* at ¶ 28, quoting *State v. Luke*, 10th Dist. Franklin No. 05AP-371, 2006-Ohio-2306, ¶ 26.

**{¶ 35}** Based on the foregoing, we find no merit to Ossege's constitutional challenges to R.C. 4511.19. Ossegee's second assignment of error is overruled.

### C. Jury Instructions

**{¶ 36}** Assignment of Error No. 3:

**{¶ 37}** THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO CHARGE THE JURY AS REQUESTED BY OSSEGE.

**{¶ 38}** In his third assignment of error, Ossege argues the trial court erred in refusing to give his requested jury instructions because the instructions simply and accurately reflected the concept that "any defendant in an OVI case" is free to challenge the weight to be given to any test result admitted at trial.

**{¶ 39}** Ossege requested the trial court to give the following instructions:

1. The fact that the court has admitted evidence of a concentration of marihuana in the defendant's urine may be evidence of use but is not conclusive proof that one is under the influence of marihuana. You must decide what weight to give such evidence.

2. In weighing the evidence in this case, you may consider that the Ohio Administrative Code requires that a suspect's name must be on a label affixed to the container holding the urine sample.

3. In weighing the evidence in this case[,] you may consider that the National Highway Traffic Safety Administration has determined that detection of tetrahydracannabinoid (THC) metabolites in urine only indicates prior THC exposure as detection is well past the window of intoxication and impairment.

The trial court rejected the instructions stating: "I declined to give those instructions per se, although some of the concepts to some extent are in the jury instructions I intend to give."

**{¶ 40}** Jury instructions must contain "all matters of law necessary for the information

- 14 -

of the jury in giving its verdict."  R.C. 2945.11; *State v. Grindstaff*, 12th Dist. Clermont No. CA2013-09-074, 2014-Ohio-2581, ¶ 28.  "The trial court should instruct the jury if the proposed instruction is a correct statement of law, applicable to the facts in the case, and reasonable minds could reach the conclusion sought by the specific instruction."  *State v. Pringle*, 12th Dist. Butler Nos. CA2007-08-193 and CA2007-09-238, 2008-Ohio-5421, ¶ 51, citing *State v. Lawson*, 12th Dist. Butler No. CA99-12-226, 2001 WL 433121, *8 (Apr. 30, 2001).  However, even if these prerequisites are met, it is not mandatory for the trial court to give the requested instruction verbatim.  *State v. Midwest Pride IV, Inc.*, 131 Ohio App.3d 1, 15 (12th Dist.1998), citing *State v. Nelson*, 36 Ohio St.2d 79 (1973), paragraph one of the syllabus.  Rather, the instruction given must at least in substance, reflect the proposed instruction.  *Id.*  Additionally, the trial court is not required to include proposed jury instructions which are repetitive and would simply confuse the jury.  *Id.* at 16.  "In reviewing a trial court's decision on jury instructions, an appellate court's role is to ascertain whether the trial court abused its discretion in refusing to give a proposed instruction, and, if so, whether that refusal was prejudicial."  *State v. Ray*, 12th Dist. Butler No. CA2012-10-213, 2013-Ohio-3671, ¶ 25.

{¶ 41} After reviewing the three proposed jury instructions, we find the trial court did not abuse its discretion in refusing to include these instructions in the jury charge as the proposed instructions were in part redundant and in part incorrect statements of law.

{¶ 42} As argued by Ossege, the aim of each of the proposed instructions was to guide the jury with respect to the weight it should give certain evidence presented.  However, the record demonstrates the trial court in fact provided an adequate and correct statement of law regarding the weighing of the evidence by the jury.  Specifically, the trial court instructed the jury, in relevant part:

Evidence for your consideration is all of the testimony received from

the witnesses, the exhibits admitted during the trial, facts that may have been agreed to by counsel, and any facts which the court requires you to accept as true. * * *

STIPULATION: Chain of custody is stipulated by the parties, but the weight to be given the urine test and chain of custody of [sic] for the jury to determine.

* * *

You are the sole judges of the facts, the credibility of the witnesses and the weight of the evidence.

To weigh the evidence[,] you must consider the credibility of the witnesses. You will apply the tests of truthfulness which you are accustomed to applying in your daily lives.

{¶ 43} The instructions provided by the trial court, were a correct, complete and accurate statement of law as warranted by the facts of this case. Moreover, the instructions given by the trial court were neutral, simple, and direct. The instructions therefore provided a fair basis upon which Ossege could and did argue the points sought by his proposed instructions: (1) that marihuana metabolite concentration does not provide conclusive proof of impairment; and (2) that the omission of his name from the sample's label should be considered in determining whether it was his urine that was analyzed. In his closing statements, counsel argued, in relevant part:

But one of the things that you've learned is that metabolites mean it's already been used, it's meaningless in the big scheme of things. Metabolites are the waste from your body. That's what it boils down to; that's what you find. It has virtually no value. * * *. If there's one thing that you have with you that should cast doubt upon this whole thing, what brings us all together here today, it's Defendant's Exhibit A. You heard the testimony with regard to Defendant's Exhibit A. An anomaly occurs when the suspect's name is not on the bottom. Now, I suggest to you that that casts doubt upon this whole thing, it casts reasonable doubt upon the whole thing. * * *. If you reject the State's urine evidence, which you are entitled to do fully because it's deserving of no weight under the circumstances, then I believe your verdict would have to be not guilty on all counts.

{¶ 44} As the trial court provided a correct and clear statement of law regarding the

weight of the evidence, the instructions proposed by Ossege were redundant. In addition, the proposed instructions were lengthy, biased, and emphasized Ossege's position regarding the weight certain evidence should be given. Moreover, Ossege's proposed instructions were at least in part, incorrect statements of law. For instance, the first and third proposed instructions indicate the jury was entitled, in weighing the evidence, to determine whether Ossege was actually impaired by the marihuana metabolites in his system at the time of the offense. However, as explained in our resolution of Ossege's second assignment of error, Ossege was convicted of violating R.C. 4511.19(A)(1)(j)(viii)(II) which is a per se offense within the state's impaired driving statute. The focus is not on the *conduct* of the defendant. *See Barrett*, 2004-Ohio-5530 at ¶ 14. Rather, the legislature has set the level at which motorists cannot drive with marihuana metabolites in their system without posing a substantial danger to the traveling public. *See Barrett* at ¶ 15. Therefore, a person may be convicted of this offense if the state proves the defendant operated a vehicle, and at that time, had a prohibited amount of marihuana metabolite in his system as shown by a chemical test. *Whalen*, 2013-Ohio-1861 at ¶ 8. Ossege's suggestion to the contrary is simply not appropriate in this case. As to the second requested instruction, substantial compliance with the ODH regulations goes to the admissibility of tests results, rather than the weight. *See Dugan*, 2013-Ohio-447 at ¶ 28, 32. Accordingly, this proposed instruction was also improper.

{¶ 45} Based on this record, we find the trial court did not abuse its discretion in refusing to include Ossege's requested instructions. Ossege's third assignment of error is overruled.

### D. Motions for Acquittal

{¶ 46} Assignment of Error No. 4:

{¶ 47} THE TRIAL COURT ERRED WHEN IT OVERRULED OSSEGE'S MOTIONS FOR ACQUITTAL.

- 17 -

**{¶ 48}** In his fourth assignment of error, Ossege argues the trial court erred when it denied his motions for acquittal as to the two counts of endangering children and one OVI count for driving with a prohibited concentration of marihuana metabolites in his urine.

**{¶ 49}** "This court reviews a trial court's decision on a Crim.R. 29(C) motion for acquittal using the same standard as that used to review a sufficiency-of-the-evidence claim." *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 28. Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul,* 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Williams* at ¶ 29, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

### 1. OVI Offense

**{¶ 50}** Ossege asserts his motion for acquittal should have been granted because the evidence at trial demonstrated he was not under the influence, impaired, intoxicated, or drunk at the time of the accident. In addition, based on the proffer made by Adelman, Ossege argues the state failed to prove he drove while impaired. At the end of the trial, Adelman made a testimonial proffer wherein she testified that the presence of THC metabolites in urine only indicates prior THC ingestion, but does not indicate whether, at the time the urine

as gathered, the subject was under the influence of THC.[5]

{¶ 51} Ossege was convicted of driving while under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1)(j)(viii)(II), which provides: "No person shall operate any vehicle * * * if, at the time of operation * * * the person has a concentration of marihuana metabolite in the person's urine of at least thirty-five nanograms of marihuana metabolite per milliliter of the person's urine."

{¶ 52} The state presented evidence that Ossege was operating a vehicle on the night of November 29, 2011, with at least 35 nanograms of marihuana metabolite per milliliter of his urine. In fact, the test results indicated the level of marihuana metabolite in his system was more than ten times the permitted amount, at approximately 356.16 nanograms of marihuana metabolite per millimeter of urine. As stated in our resolution of Ossege's second and third assignments of error, Ossege was convicted of a per se offenses under R.C. 4511.19. Accordingly, the state was not required to prove Ossege was impaired. Rather, the state was only required to prove Ossege had operated a vehicle and, at that time, he had a prohibited amount of marihuana metabolite in his system-as shown by a chemical test. *See Whalen* at ¶ 8. As the state presented such evidence, we find the trial court did not err in overruling Ossege's motion for acquittal as to this offense.

### 2. Endangering Children Offense

{¶ 53} Ossege contends he is entitled to a judgment of acquittal because R.C. 2919.22(C) is "structurally defective" as it fails to set forth the requisite mens rea in order to violate the statute. Ossege also argues the complaint against him was defective because it failed to set forth a mental state. Finally, Ossege argues the statute violates his equal protection rights.

---

5. THC is the active ingredient of marihuana.

### a. Mens Rea

{¶ 54} According to Ossege, as the endangering children statute under R.C. 2919.22(C) does not state a specific mens rea, the appropriate mens rea is reckless. Ossege asserts the trial court should have granted his motion for acquittal as the record is devoid of any evidence that his conduct recklessly endangered his children.

{¶ 55} Ossege was convicted of endangering children in violation of R.C. 2919.22(C)(1) which provides: "No person shall operate a vehicle * * * within this state in violation of division (A) of section 4511.19 of the Revised Code when one or more children under eighteen years of age are in the vehicle * * *."  Ossege urges this court to find the appropriate mental state for this offense is reckless.  Recklessness is the culpable mental state for endangering children under sections (A) and (B) of R.C. 2919.22.  *See State v. McGee*, 79 Ohio St.3d 193, 195 (1997); *State v. O'Brien*, 30 Ohio St.3d 122, 124 (1987); *State v. Dunn*, 4th Dist. No. 06CA6, 2006-Ohio-6550, ¶ 19.  However, section (C) of R.C. 2919.22 fails to specify the culpable mental state.  Accordingly, we look to R.C. 2901.21(B) to determine the requisite mental state.  R.C. 2901.21(B) provides:

> (B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

{¶ 56} The Fourth District Court of Appeals has previously applied the procedure set forth in R.C. 2901.21(B) to R.C. 2919.22(C) and found:

> [C]ulpability is not required for a person to be guilty of child endangering under R.C. 2919.22(C). R .C. 2919.22(C)(1) does not specify a degree of culpability, * * *, but evidences an intent to impose strict criminal liability by its dependence upon a violation of R.C. 4511.19(A), in connection with the presence of one or more children under eighteen years of age are in the vehicle, streetcar, or trackless trolley. Violations of R.C. 4511.19(A) are strict liability

> violations. * * *. "[T]he overall design of the statute is to protect against the hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired." *State v. Cleary* (1986), 22 Ohio St.3d at 199. Because R.C. 2919.22(C) requires in addition to those elements required by R.C. 4511.19 only proof that one or more children under the age of 18 are in the vehicle when the OVI occurs, by extension, it is also a strict liability crime.

*Dunn* at ¶ 21.

{¶ 57} We find the rationale of the *Dunn* court persuasive and hold, pursuant to R.C. 2901.21(B), that to be guilty of endangering children under R.C. 2919.22(C), culpability is not required as the offense is a strict liability crime. *Id.* Accordingly, to be found guilty, the state must prove beyond a reasonable doubt that the defendant committed a violation of R.C. 4511.19(A) and that one or more children under the age of 18 were in the vehicle at the time of the violation. As recklessness is not an element of the offense Ossege was charged with, the state was not required to prove whether his actions recklessly endangered the children or to specify a mental state within the complaint. *See Dunn* at ¶ 21.

{¶ 58} In the present case, as detailed above, the state presented evidence which demonstrated Ossege violated R.C. 4511.19(A), or more specifically, violated R.C. 4511.19(A)(1)(j)(viii)(II). In addition, Officer Marsh testified that on the night of the accident, Ossege indicated he had two passengers in the vehicle, his two children, ages three and ten. Officer Marsh confirmed he saw the two children and believed they appeared to be the ages indicated by Ossege. Accordingly, as the state presented evidence upon which any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the trial court did not err in denying Ossege's motion for acquittal.

### b. Constitutional Challenge

{¶ 59} Ossege also asserts R.C. 2919.22(C) is unconstitutional as it violates his equal protection rights.

**{¶ 60}** The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Ohio's Equal Protection Clause in turn provides that "[a]ll political power is inherent in the people. Government is instituted for their equal protection and benefit * * *." Section 2, Article I, Ohio Constitution. The limitations placed upon governmental action by the state and federal government are essentially the same. *Ohio Apt. Assn. v. Levin*, 127 Ohio St.3d 76, 2010-Ohio-4414, ¶ 33. The Equal Protection clauses require all similarly situated individuals be treated in a similar manner. *Id.*

**{¶ 61}** Statutes are presumed constitutional; therefore the level of review depends on the nature of the rights that are claimed to be at issue. *Eppley v. Tri-Valley Local Sch. Dist. Bd. of Edn.*, 122 Ohio St. 3d 56, 2009-Ohio-1970, ¶ 12-13. Ossege claims he is presenting a facial challenge to the statute as well as a challenge to the statute as it applies to him. "A statute or ordinance is invalid 'on its face' when it is unconstitutional in every conceivable application or when it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.'" *State v. Robinson*, 12th Dist. Warren No. CA2008-08-102, 2009-Ohio-3673, ¶ 8, quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118 (1984). Ossege, as the party challenging the constitutionality of the statute, bears the burden of proving it is unconstitutional under the appropriate level of scrutiny. *Eppley* at ¶ 13. A statutory classification that involves neither a suspect class nor a fundamental right does not violate the Equal Protection Clauses if it bears a rational relationship to a legitimate governmental interest. *Levin* at ¶ 34. However, if a fundamental right is involved, the strict scrutiny test is used and the statute will be found constitutional as long as it is narrowly tailored to serve a compelling state interest. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 18.

**{¶ 62}** The basis of Ossege's facial challenge appears to be a regurgitation of his

arguments as to the constitutionality of R.C. 4511.19 set forth in his second assignment of error. Essentially, Ossege asserts that by relying on a violation of R.C. 4511.19(A) as a predicate offense, the endangering children statute is unconstitutional as it "creates criminal liability without regard to whether one is actually impaired and/or functionally unable to drive as a result of ingestion or use of drugs." For the reasons set forth more fully in our resolution of Ossege's second assignment of error, we find no merit to Ossege's arguments. The General Assembly was well-within its police powers to set a prohibited amount of marihuana, an illegal substance in Ohio, which may be in one's system while operating a vehicle. Moreover, the endangering children statute bears a rational relationship to the legitimate governmental interest in protecting children. Ossege has failed to demonstrate how this statute does not apply equally to all those similarly situated, and therefore how it violates equal protection.

{¶ 63} As to Ossege's applied challenge to R.C. 2919.22, he asserts the statute violates his fundamental right to parent. One indeed does have the fundamental right to parent. *In re Brayden James*, 131 Ohio St.3d 420, 2007-Ohio-2335, ¶ 16. Yet, Ossege has failed to demonstrate and this court fails to see how R.C. 2919.22, as applied to Ossege, infringes upon this right. Driving is a privilege and not a constitutional right. *State v. Tanner*, 15 Ohio St.3d 1, 3 (1984). By logical extension, one certainly does not have a fundamental right to drive children, even one's own children, after using an illegal drug. As noted above, regardless of whether marihuana metabolites are proof of impairment, the state, acting within its police powers, has criminalized driving with more than 35 nanograms of marihuana metabolite in one's system. *See Whalen* at ¶ 17. As the statute does not involve a fundamental right, it does not require strict scrutiny.

{¶ 64} As Ossege has failed to demonstrate how the application of this statute treats people differently on an arbitrary basis or how the statute infringes upon his constitutional

right to parent, we find no merit to his constitutional challenges.

{¶ 65} Based on the foregoing, we find that the state presented sufficient evidence upon which the jury could have found each of the essential elements of driving while under the influence of alcohol or drugs and endangering children beyond a reasonable doubt. The trial court therefore did not err in denying Ossege's motions for acquittal. Ossege's fourth and final assignment of error is overruled.

### III. CONCLUSION

{¶ 66} Having found no merit to Ossege's assigned errors, we hereby affirm the judgment of the trial court.

S. POWELL and M. POWELL, JJ., concur.